IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARY CALDWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:13CV713-WKW |
| | ) | |
| CHUCK HAGEL, Secretary, | ) | |
| United States Department of Defense, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, *pro se*, brings this action against Defendant Chuck Hagel,[1] Secretary of the

United States Department of Defense, alleging employment discrimination pursuant to Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Doc. #1, at 1). Plaintiff

alleges that she was subjected to "assault, har[]assment, reassignment, retaliation." (Doc. #1,

at 1, ¶ 4). She claims that she was the subject of discrimination based on her "right to file

gr[ie]vance with union and EEOC complaint because [her] supervisor physically assaulted

[her] and continues to har[]ass and intimidate [her] along with her supervisor." (Doc. #1, at

2, ¶ 6).

This action is presently before the court on defendant's motion to dismiss or, in the

alternative, for summary judgment. (Doc. # 31). The court granted plaintiff extensions to

---

[1]Defendants Hennessey, Panetta, and Department of Defense were previously dismissed.
(Doc. ## 24, 30).

respond to defendant's motion, but to date plaintiff has not responded.  (Doc. ## 33, 36, 41).[2]
Upon review of the motion and the record, the court concludes that dismissal or summary
judgment is due to be granted as to all of plaintiff's claims.

## MOTION TO DISMISS STANDARD

To overcome a defendant's Rule 12(b)(6) motion, the complaint must include "a short
and plain statement of the claim showing that the [plaintiff] is entitled to relief."  Fed. R. Civ.
P. 8(a)(2).  The complaint must include factual allegations sufficient "to raise a right to relief
above the speculative level."  Bell Atlantic Corp v. Twombly, 550 U.S. 544, 555 (2007).
"Threadbare recitals of the elements of a cause of action, supported by mere conclusory
statements" are insufficient to state a claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009)(citing Twombly, 550 U.S. at 555).  Courts considering motions to dismiss first
"eliminate any allegations in the complaint that are merely legal conclusions" and, then,
determine whether the well-pleaded factual allegations of the complaint – assuming their
veracity – "'plausibly give rise to an entitlement to relief.'"  See American Dental Ass'n v.
Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010)(citing Iqbal, 129 S. Ct. at 1950).  In
considering a Rule 12(b)(6) motion, the court "'limits its consideration to the pleadings and
exhibits attached thereto.'"  Thaeter v. Palm Beach County Sheriff's Office, 449 F.3d 1342,
1352 (11th Cir. 2006)(quoting Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th

---

[2] After plaintiff's counsel withdrew and plaintiff did not secure counsel on her own, the court
appointed volunteer counsel to assist plaintiff in mediation proceedings. (Doc. ## 36, 38, 47, 48).
Mediation was not fruitful, counsel was relieved of further responsibility, and plaintiff now proceeds
*pro se*.  (Doc. # 51).

Cir. 2000)(per curiam ); <u>see also</u> <u>Fuller v. SunTrust Banks, Inc.</u>, 744 F.3d 685, 695-96 (11th Cir. 2014)(also noting the general rule).

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For summary judgment purposes, an issue of fact is "material" if, under the substantive law governing the claim, its presence or absence might affect the outcome of the suit. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). If the movant fails to satisfy its initial burden, the motion for summary judgment will be denied. <u>Kernel Records Oy v. Mosley</u>, 694 F.3d 1294, 1300 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 1810 (2013). If the movant adequately supports its motion, the burden shifts to the opposing party to establish – "by producing affidavits or other relevant and admissible evidence beyond the pleadings" – specific facts raising a genuine issue for trial. <u>Josendis v. Wall to Wall Residence Repairs, Inc.</u>, 662 F.3d 1292, 1315 (11th Cir. 2011); <u>Dietz v. Smithkline Beecham Corp.</u>, 598 F.3d 812, 815 (11th Cir. 2010); Fed. R. Civ. P. 56(c)(1)(A). "All affidavits [and declarations] must be based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence[.]" <u>Josendis</u>, 662 F.3d at 1315; Fed. R. Civ. P. 56(c)(4). The court views the evidence and all reasonable factual inferences in the light most favorable to the nonmovant. <u>Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC</u>, 702 F.3d 1312, 1316 (11th Cir. 2012). However, "'[i]f no reasonable jury could return

a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted.'" Morton v. Kirkwood, 707 F.3d 1276, 1284 (11th Cir. 2013)(citation omitted).

## BACKGROUND AND UNDISPUTED FACTS[3]

At all times relevant to the complaint, plaintiff was employed at the Maxwell Air Force Base Commissary in Montgomery, Alabama, as a part-time Store Associate. Plaintiff accepted a career conditional appointment as Store Associate effective October 25, 2010. (Doc. #31-1, at 3; Doc. #31-2, at 2). As a Store Associate, plaintiff was trained in various departments such as product, front end, and office functions. (Doc. #31-1, at 3). Her appointment was not to exceed forty hours biweekly. (Doc. #31-1, at 3; Doc. #31-2, at 2, blocks 32 & 33). In March 2012, plaintiff agreed to a temporary increase in her hours to sixty-four hours biweekly, for a period not to exceed six months. (Doc. #31-1, at 3; Doc. #31-2, at 4, 6). Effective September 23, 2012, plaintiff's hours were reduced to forty hours biweekly. (Doc. #31-1, at 3; Doc. #31-3, at 2).

On February 1, 2013, plaintiff and her supervisor, Marisol Hennessey, the Maxwell Commissary Store Manager, were involved in an incident in which plaintiff alleges Hennessey physically assaulted plaintiff. (Doc. #1, at 2; Doc. #31-8, at 2). Plaintiff maintains that Hennessey grabbed plaintiff by the shoulders, twisted her around, shoved her, and

---

[3] As it is required to do, the court has viewed the evidence presented on the motion for summary judgment in the light most favorable to the plaintiff. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

4

screamed at her.  (Doc. #1, at 2; Doc. #31-9, at 4-7).  Samuel King, a witness to the incident, stated that Hennessey reached out and grabbed plaintiff on the shoulder, turned her around, and pushed her "toward produce."  (Doc. #31-11, at 21).

On February 4, 2013, plaintiff met with Zone Manager Michael Mertz about the incident.  (Doc. #31-8, at 3-5).  Plaintiff told Mertz that Hennessey had touched plaintiff twice on the shoulders, turned her around, said that more labels needed to be hung in the store, told plaintiff she was a follower, and told plaintiff she needed to stop following people and do her job.  Plaintiff said that Hennessey made her feel bad and embarrassed.  Plaintiff told Mertz that Hennessey later apologized for the incident, and plaintiff accepted the apology.  (Doc. #31-8, at 3, 5).  On February 5, 2013, Mertz spoke with Hennessey, who recounted that she put her arms around plaintiff in a friendly way and said come with me.  (Doc. #31-8, at 3, 5).  Hennessey said she apologized to plaintiff after she learned plaintiff was upset, and that plaintiff had accepted Hennessey's apology.  Mertz told Hennessey that she should never touch anyone at the workplace, and Hennessey said she understood. (Doc. #31-8, at 3, 5).

On February 19, 2013, Ermies Hernandez, the Store Director and Hennessy's supervisor, implemented an agency-wide hiring freeze that required all part-time employees to revert back to their authorized hours.  (Doc. #31-3, at 4).  Hernandez avers that she had no first-hand knowledge of the February 1 incident.  (Doc. #31-1, at 3).  On February 22, 2013, plaintiff was moved from the grocery to the office area, where she worked in the same

area as Hennessey and another supervisor, Sue Wilkins.  (Doc. #31-1, at 4; Doc. #31-11, at 3).  Hernandez avers that plaintiff was moved in accordance with her job description, to expose plaintiff to the work of the Office of the Commissary Officer, and not for any retaliatory or discriminatory purpose.  (Doc. #31-1, at 4).  Hernandez alleges that "[a]fter it was determined that [plaintiff] was not well suited for this work and given the hiring freeze, she was transferred to the front end, where she performed cashiering and other related functions." (Doc. #31-1, at 4-5).

On April 16, 2013, plaintiff contacted the EEO counselor.  (Doc. #31-8, at 2).  On April 17, 2013, plaintiff completed a Pre-Complaint Intake form, and, for the basis of discrimination, plaintiff checked "reprisal" but did not specify any prior EEO activity.  She stated that the applicable issues were "harassment," "reassignment," and "job training." (Doc. #31-9, at 2). Plaintiff wrote that the alleged incident had occurred on February 1, 2013. (Doc. #31-9, at 3).  She asked to be transferred to Gunter Commissary.  (Doc. #31-9, at 3). Plaintiff previously had sought a transfer to Gunter in July 2012 because it was closer to her home.  (Doc. #31-7, at 2).  Hernandez avers that plaintiff was not transferred because there were no positions at the Gunter Commissary to which plaintiff could transfer.  (Doc. #31-1, at 4).

On April 19, 2013, Wilkins told plaintiff that she "was failing at [her] job; [she] needed to speed up and get with it because [she] had already failed back here." (Doc. #31-11, at 3, 8). On April 22, 2013, plaintiff reported the February 1 incident to Military Police;

Hennessey was arrested thereafter and issued a citation for simple assault.  (Doc. #31-11, at 3, 11).  Plaintiff alleges that Hennessey was handcuffed and arrested in connection with the citation, and avers that it was stressful for plaintiff when Hennessey returned to work.  (Doc. #1, at 2, ¶ 9).  Plaintiff reports that on April 23, 2013, Hennessey called plaintiff "Hey chick" in a demeaning manner.  (Doc. #31-11, at 10).  Plaintiff stated that Hennessey commented and acted as if plaintiff was not accomplishing her duties, she left work so plaintiff would have to deviate from her duties during weekends, and plaintiff was told to make coffee.  (Doc. #31-11, at 3).

On May 20, 2013, plaintiff received notice of her right to file a formal EEO complaint.  (Doc. #31-10).  On June 4, 2013, plaintiff submitted a Discrimination Complaint, alleging reprisal, and specifically noting "verbal abuse, change in schedules, hostile work environment."  (Doc. #31-11, at 2).  Plaintiff indicated that the date of the most recent discriminatory incident for which she sought counseling was April 18, 2013, which was also the date she gave as the "notice of final interview received."  (Doc. #31-11, at 2).  Plaintiff attached a description of the reason she believed she had been discriminated against, starting with the February 1 incident, when Hennessey "displayed unprofessional conduct toward me as well as assaulted me."  (Doc. #31-11, at 3).  Plaintiff reported that her supervisor in the office, Sue Wilkins, appeared to have a close relationship with Hennessey and plaintiff did not think Wilkins was impartial.  Plaintiff stated in the June 4, 2013, complaint:

> (1) Immediately following the assault, my hours were reduced to 20 hours per week, prior to any other employees hours being decreased. (2) I have not been

allowed any weekends off and even when other employees have agreed to change shifts with me, these requests were denied.  I feel that these actions are done *because I filed the EEO complaint.* (3) On April 19, 2013, Ms. Wilkins stated to me that I was failing at my job; I needed to speed up and get with it because I had already failed back here.

(Doc. #31-11, at 3)(emphasis added).  Plaintiff did not specify in the EEO complaint when, exactly, her hours were reduced.  In the complaint she filed in this court, plaintiff added that her requests for leave were denied when coworkers' requests were granted, and plaintiff's leave paperwork was misplaced, unlike every other employee's paperwork; however, plaintiff did not specify when these events occurred.  (Doc. #1, at 2, ¶ 9).

Hernandez avers that she compared plaintiff's requested leave with the store schedule, and plaintiff was scheduled to work on only one weekend for which she had requested leave, on July 26-27, 2013; Maxwell Commissary was then operating under a furlough, and leave was denied so that personnel shortages would not affect operations.  (Doc. #31-1, at 5; Doc. ##31-4, 31-5, 31-6).  Plaintiff's request for leave on October 12, 2013, either was not submitted or denied, but plaintiff was scheduled to be off on October 13, 2013, as she requested.  (Doc. #31-1, at 5; Doc. ##31-4, 31-5, 31-6).  Hernandez avers that it is the policy at Maxwell Commissary not to allow an employee to secure another to work in the employee's place because "[s]uch informal arrangements can conflict with agreements existing between the union and management as well as impact the mission when casual changes in hours amongst employees lead to neither employee showing up for work."  (Doc. #31-1, at 5).

The EEO Counselor submitted a report on June 28, 2013, indicating that plaintiff said "she felt she was the victim of reprisal, but she has not filed an EEO complaint previously or been involved as a witness in someone else's complaint."  (Doc. #31-8, at 2). The counselor reported that by "reassignment," plaintiff meant she wanted to be reassigned to another commissary, and that by "job training," plaintiff meant she wanted training necessary to be successful at another commissary. (Doc. #31-8, at 2).  On July 2, 2013, plaintiff's EEO complaint was dismissed. (Doc. #31-12).  The decision characterizes plaintiff's complaint as discrimination "because of reprisal (no prior EEO activity)" when, on February 1, 2013, Hennessy grabbed plaintiff, turned plaintiff around, pushed her in the direction in which Hennessey wanted plaintiff to go, and screamed at plaintiff in front of employees and customers.  (Doc. #31-12, at 2).  The agency denied the claim because there was no record of plaintiff's previously filing an EEO complaint or participating as a witness, and because plaintiff failed to contact an EEO counselor within forty-five days of the February 1 incident or offer an explanation to extend the deadline.  Id.

On January 30, 2014, plaintiff's request to transfer to Gunter Commissary was approved. She was reassigned to the position of Sales Store Checker for fifty hours biweekly, beginning February 9, 2014.  (Doc. 31-7, at 4). As of May 29, 2014, to Hernandez's knowledge, plaintiff was still working at Gunter.  (Doc. #31-1, at 6).

## DISCUSSION

### Administrative Remedies

Defendant argues that any claims plaintiff may have for discrimination that occurred more than forty-five days before April 16, 2013 – that is, before March 2, 2013 – are due to be dismissed for failure to exhaust administrative remedies.  Before a federal employee may file a civil action in federal district court to redress a claim of employment discrimination, she must first exhaust administrative remedies by seeking relief from her employing agency. Brown v. General Services Administration, 425 U.S. 820, 831-33 (1976); cf. Crawford v. Babbitt, 186 F.3d 1322, 1326 (11th Cir. 1999)("A federal employee must pursue and exhaust her administrative remedies as a prerequisite to filing a Title VII action."). Pursuant to congressional authority, the Equal Employment Opportunity Commission (EEOC) promulgated regulations that require a federal employee who asserts a discrimination charge against her employer to contact a designated EEO counselor within forty-five days of "the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1); see 42 U.S.C. § 2000e-16(b)(giving the EEOC authority to issue rules to enforce Title VII).  The  deadline is not jurisdictional.  It is "subject to waiver, estoppel and equitable tolling," and can be waived if the employee shows cause for failing to meet the forty-five day deadline. 29 C.F.R. § 1614.604(c); 29 C.F.R. § 1614.105(a)(2); Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982).  Plaintiff, however, does not dispute that she first contacted the EEO counselor on April 16, 2013, and she provides no reason for her failure to contact the counselor sooner.  Consequently, claims arising more than forty-five days before April 16, 2013 are due to be dismissed.  See Thompson v. West, 883 F. Supp. 1502, 1507 (M.D. Ala.

1995)("it has long been settled in this circuit that a federal employee's unexcused failure to timely initiate an administrative discrimination complaint results in dismissal of the suit for failure to state a claim upon which relief may be granted").

Plaintiff's complaint is not limited to events occurring before March 2, 2013, however, and the court will address plaintiff's allegations regarding events that occurred on or after that date. Also, to the extent that events occurring before March 2, 2013, were part of an escalating progression of events supporting plaintiff's claim, the court will address them. See Malone v. K-Mart Corp., 51 F. Supp. 2d 1287, 1300-01 (M.D. Ala. 1999)(discussing continuing violations in workplace harassment). Even assuming that all of plaintiff's claims were properly exhausted before she filed suit, defendant's motion for summary judgment is due to be granted.[4]

### Analytical Framework for Discrimination Claims

Under Title VII, it is unlawful for an employer to discriminate against an employee on the basis of her race, color, religion, sex, or national origin with respect to the terms and conditions of her employment. 42 U.S.C. § 2000e–2(a)-(m). The McDonnell

---

[4] Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. See Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990). Thus, plaintiff's *pro se* status alone does not allow the court to disregard elementary principles of production and proof in this civil action. In this case, plaintiff fails to demonstrate a genuine dispute of material fact as required to overcome defendant's motion for summary judgment.

Douglas/Burdine[5] framework was established by the Supreme Court for evaluating a Title VII plaintiff's claims of discrimination against an employer where, as here, there is no direct evidence of discrimination. See Combs v. Plantation Patterns, 106 F.3d 1519, 1527-28 (11th Cir. 1997); Brown v. Alabama Department of Transportation, 597 F.3d 1160, 1174 (11th Cir. 2010). The plaintiff must first make out a *prima facie* case of discrimination. Burdine, 450 U.S. at 252-53; Walker v. Mortham, 158 F.3d 1177, 1183 (11th Cir. 1998); Combs, 106 F.3d at 1527-28. "'Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case.'" Combs, 106 F.3d at 1528 (quoting Burdine, 450 U.S. at 254).

If the plaintiff establishes a *prima facie* case, the employer has the burden of producing "legitimate, non-discriminatory reasons for the challenged employment action." Combs, 106 F.3d at 1528 (citing McDonnell Douglas, 411 U.S. at 802). "To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Combs, 106 F.3d at 1528 (quoting Burdine, 450 U.S. at 257). If the employer articulates a legitimate, nondiscriminatory reason for its decision, the mandatory inference of discrimination arising from the *prima facie* case is destroyed.

---

[5]McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981).

Walker, 158 F.3d at 1184. The plaintiff must then produce evidence "including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Combs, 106 F.3d at 1528.  A plaintiff may establish pretext by producing evidence that reveals "'such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the defendant's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.'" Springer v. Convergys Customer Management Group, Inc., 509 F.3d 1344, 1348-49 (11th Cir. 2007)(quoting Cooper v. Southern Co., 390 F.3d 695, 725 (11th Cir. 2004)).  "However, a reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" Id. (citing Brooks v. County Comm'n. of Jefferson County, 446 F.3d 1160, 1163 (11th Cir. 2006))(emphasis in original).[6]

Plaintiff does not contend, in any of the documents of record, that she was discriminated against on account of her race, color, religion, sex, or national origin.  Instead, plaintiff presents her claim as one of reprisal connected to the alleged February 1, 2013, assault; in her June 4, 2013, complaint, plaintiff suggested that the reprisal occurred because she filed the EEO complaint.  (Doc. #31-11, at 2-3, 26-28).  Plaintiff's claims are not particularly clear, but the court treats her complaint as raising a claim under Title VII based

---

[6]In some cases, proof that an employer's asserted justification is false, when coupled with the evidence establishing the plaintiff's *prima facie* case, is sufficient to permit an inference of discrimination. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000).

on retaliation.  See 42 U.S.C. § 2000e-16(a)(Title VII's federal sector provision); cf. Gómez-Pérez v. Potter, 553 U.S. 474, 479, 487 (2008)(interpreting similarly-worded federal sector ADEA anti-discrimination provision to bar retaliation).

### Retaliation

To establish a *prima facie* case of retaliation under Title VII, plaintiff must demonstrate that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) a causal relationship exists between her protected activity and the adverse action.  Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008).  If the plaintiff establishes a *prima facie* case, giving rise to a presumption of retaliation, the burden of production shifts to the defendant to rebut the presumption by articulating a legitimate reason for the materially adverse action.  Brown, 597 F.3d at 1181 (quoting Bryant v. Jones, 575 F.3d 1281, 1307-08 (11th Cir. 2009)).  If the defendant does so, the plaintiff may then demonstrate that the articulated reason is a pretext to mask the defendant's improper motive.  Id.

Statutorily protected activity includes both formal EEO complaints and complaints to supervisors about discrimination.  Shannon v. Bellsouth Telecommunications, Inc., 292 F.3d 712, 716 n.2 (11th Cir. 2002)("Title VII protects not just 'individuals who have filed formal complaints,' but also those 'who informally voice complaints to their superiors or who use their employers' internal grievance procedures.'")(quoting Rollins v. Fla. Dep't of Law Enforcement, 868 F.2d 397, 400 (11th Cir.1989)(per curiam)). Nothing in the record suggests

14

that the February 1, 2013, incident was preceded by a formal complaint from the plaintiff about discrimination on the basis of race, color, religion, sex, or national origin, or that plaintiff previously had otherwise opposed conduct unlawful under Title VII.[7] While protected conduct does not necessarily have to be a formal EEO complaint, it does have to be connected to illegal discrimination.  See Little v. United Tech., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997)(to qualify as protected activity under the opposition clause, plaintiff must "show[] that [s]he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices").  Title VII is not "a general civility code for the American workplace."  See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998);  see also Labonia v. Doran Assoc., LLC, 2004 WL 1921005, at *11 (D. Conn. Aug. 25, 2004)(police complaint against supervisor was not based on plaintiff's sex or directed at her employer's unlawful employment practice and, thus, did not constitute protected activity for purposes of a Title VII retaliation claim).  Viewing the evidence in the light most favorable to plaintiff, the February 1, 2013, incident was, at most, an assault unrelated to activities or characteristics protected by Title VII.  Plaintiff was able to seek a remedy outside the parameters of Title VII, and did so, by reporting the alleged assault to the police.  Plaintiff's first protected activity arguably occurred on April 16, 2013, when she contacted the EEO counselor to complain about the February 1, 2013, incident.  Cf. Eastland v. Tennessee Valley Auth., 704 F.2d 613, 627 (11th Cir.) ("Evidence that the adverse

---

[7] Likewise, no evidence of record suggests that the February 1, 2013, incident was itself related to plaintiff's race, color, religion, sex, or national origin in any way.

treatment followed closely upon the protected activity (i.e., contacting an EEO officer) may be sufficient to establish a causal connection."), reh'g denied and opinion modified, 714 F.2d 1066 (11th Cir. 1983); see also Wesolowski v. Napolitano, 2 F. Supp. 3d 1318, 1345 (S.D. Ga. Feb. 27, 2014) (federal employee's EEO counseling triggered the participation clause protection which, unlike the opposition clause, does not require reasonable good faith belief that the employer was engaged in unlawful employment practices under Title VII)(citing Wesolowski v. Napolitano, 2013 WL 1286207, at *6-8 (S. D. Ga. Mar. 25, 2013).

Adverse action "means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination," and it "is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington Northern Ry. Co., 548 U.S. at 57, 64; see also Ambus v. AutoZoners, LLC, 2014 WL 7369788, at *14 (M.D. Ala. Dec. 29, 2014)("purported adverse employment actions may not support a *prima facie* case for discrimination, yet still support a *prima facie* case for retaliation under the same or related facts"). In her June 4, 2013, formal complaint, Plaintiff refers to the reduction in her work hours; transfer from the grocery to the office; negative comments, including that she was failing; and denial of leave on weekends. (Doc. #31-11, at 3). Assuming that such actions are materially adverse,[8] plaintiff fails to show a causal connection between these and any

---

[8] Defendant argues that physical assault, negative statements, and denial of leave are not "adverse actions" because they did not affect the terms, conditions, or privileges of plaintiff's employment. (Doc. #32, at 16). Defendant does not suggest, however, that the reduction in plaintiff's hours fails to qualify as adverse action. Cf. Cotton v. Cracker Barrel Old Country Store,

protected conduct.

To meet the causal connection requirement, plaintiff must show that retaliation was the "but for" cause of the adverse action. <u>Univ. of Texas Southwestern. Med. Ctr. v. Nassar</u>, 133 S. Ct. 2517, 2528 (2013)("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."). Plaintiff first approached the EEO counselor on April 16, 2013; thus, only adverse actions taken by her employer after that date could be causally related to plaintiff's statutorily protected activity. Plaintiff cannot establish that her prior transfer and reduction in hours, which occurred in February 2013, are causally related to her EEO complaint; therefore, those employment actions cannot support her retaliation claim. Plaintiff also alleged that her leave requests were "mishandled" and that she was denied leave on weekends, but she did not specify when those events occurred, and she did not dispute defendant's evidence that it denied only two of plaintiff's leave requests after plaintiff's EEO complaint – the first for the weekend July 26-27, approximately three months after plaintiff contacted the EEO counselor, and the second for October 13, 2013, five months after plaintiff contacted the EEO counselor. Where, as here, there is no additional causation evidence, the temporal proximity between the statutorily protected activity and the adverse action must be "very close." <u>Thomas v. Cooper Lighting, Inc.</u>, 506 F.3d 1361, 1364 (11th Cir. 2007). Three months, alone, is not

---

<u>Inc.</u>, 434 F.3d 1227, 1231 (11th Cir. 2006)("reduction in an employee's hours, which reduces the employee's take-home pay, qualifies as a tangible employment action," though on the facts of that case the reduction was not a *materially* adverse action).

"very close."  Id.; see also Ambus, 2014 WL 7369788, at *16.  Plaintiff has not identified

when, exactly, she submitted the request to take leave on October 12, 2013 – the leave

request that, according to the defendant, was either not submitted or denied – and she has not

produced sufficient evidence to create a genuine dispute regarding the causal connection

between plaintiff's contacting the EEO counselor and her employer denying or misplacing

her leave request.  The negative comments that Hennessey made to plaintiff about failing in

her job were made within days after plaintiff contacted the EEO counselor and, therefore,

they satisfy the temporal proximity requirement.  Thomas, 506 F.3d at 1364.  Even assuming

that these negative comments amount to an adverse employment action, however, defendant

offers legitimate reasons for this action and, indeed, for all of the other allegedly adverse

employment actions it took against the plaintiff.

Defendant states that an office-wide hiring freeze necessitated reduction of hours for

part-time employees to the hours approved in their appointments; a furlough prevented

employees from taking leave in July 2013; the employer had a policy to deny employees the

ability to swap shifts to avoid conflict and absenteeism; plaintiff was moved around in her

job to learn various duties, but she was not well-suited for work in the Office of the

Commissary Officer and was thereafter moved to the front end, where she performed as a

cashier and related functions; and, in 2014, plaintiff's request to transfer to the Gunter

Commissary was granted.  These are all legitimate, nondiscriminatory reasons for the alleged

adverse employment actions.  Thus – even assuming that plaintiff engaged in statutorily

protected conduct and soon thereafter suffered adverse action in the form of a transfer from the grocery to the office, a reduction in hours, denial of leave, and negative comments – defendant has satisfied its burden of articulating legitimate, nondiscriminatory reasons for its actions.

"If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." Chapman v. AI Transp., 229 F.3d 1012, 1024-25 (11th Cir. 2000)(*en banc*).  Plaintiff has not produced or identified evidence of record to demonstrate that defendant's legitimate, nondiscriminatory reasons for the adverse actions are pretextual.  Plaintiff has, therefore, failed to meet her burden of demonstrating a genuine issue of fact as to whether the  reasons articulated by defendant are a pretext to mask retaliation, and defendant is entitled to summary judgment on all of the claims.

## CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that:

(1) defendant's motion to dismiss or, in the alternative, for summary judgment (Doc. # 31) be GRANTED;

(2) that plaintiff's retaliation claims, to the extent that they arise from any discrete instances of allegedly retaliatory conduct that occurred before March 2, 2013, be

DISMISSED pursuant to Fed. R. Civ. P. 12(b)(6) due to plaintiff's failure to exhaust administrative remedies; and

(3) that summary judgment be entered in defendant's favor as to all of plaintiff's remaining claims of retaliation.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action. The parties are DIRECTED to file any objections to this Recommendation on or before January 29, 2015. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive, or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 15th day of January, 2015.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE